UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL DIVISH,

     Plaintiff,

v.

KIMBERLY COSTA, SANDRA
WILSON, ADRIANNE
VANLANGVELDE, and DANIELLE
DAVIS,

     Defendants.

_____/

Case No. 2:23-cv-11266
District Judge Jonathan J.C. Grey
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 30)[1]

### I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff Daniel Divish (Divish), proceeding *pro se*, is suing defendants Kimberly Costa (Costa), Sandra Wilson (Wilson), Adrianne Vanlangvelde (Vanlangvelde), and Danielle Davis (Davis).  Costa is a social worker employed by the Michigan Department of Corrections (MDOC), Wilson and Vanlangvelde are both members of the Michigan Parole Board, and Smith is a parole agent employed by Otsego County

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

Circuit Court.  (ECF No. 1, PageID.2-3).  In broad terms, Divish alleges that Davis falsely accused him of having sexual contact with a minor which in turn caused the MDOC to classify him as a sex offender and treat him as such in violation of his rights under the Fifth, Eighth, and Fourteenth Amendments.  *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 10).

Before the Court is defendants' motion to dismiss, (ECF No. 30), to which Divish has filed a response, (ECF No. 40).  Defendants have filed a reply, (ECF No. 41), and the motion is ready for consideration.  For the reasons that follow, the undersigned RECOMMENDS that defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART.  As will be explained, Divish should be allowed to proceed to the merits on his Fourteenth Amendment procedural due process claim; however, his Fifth and Eighth Amendment claims should be DISMISSED.

## II.    Background

### A.    Allegations From the Complaint

Divish alleges that he has been "arbitrarily labeled a sex offender, at one point requiring special housing, and sexual offender therapy" while housed at Parnall Correctional Facility (SMT).  (ECF No. 1, PageID.1).  He says that Davis has written multiple presentence investigation reports (PSI) and a parole violation report that are false and contradictory.  (*Id.*, PageID.3).  These reports included

2

false confessions of which there are no transcripts, and Davis knowingly used the false information to discredit Divish in official judicial proceedings. (*Id.*).

Specifically, Divish says that Davis falsely incorporated into his file that Divish had sex with a minor and tried to have felony charges brought against him. (*Id.*, PageID.4). Nonetheless, Divish has never been convicted of a crime of sexual nature. (*Id.*). Despite this, he alleges that his parole board hearing was continued (as opposed to parole being granted) because he would not admit to sexual misconduct with a minor. (*Id.*, PageID.5). He says he was never asked about the actual charges of which he had been convicted, and it became clear that he would be required to complete sexual offender programming and therapy before being considered for parole. (*Id.*).

### B.    Facts That the Court May Consider

Although the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true" on a motion to dismiss, *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), the Court may consider (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies as well, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Defendants have attached a number of public

documents and reports referenced in the complaint in order to shed light on the facts of this case. They are briefly summarized as follows.

Divish was first charged with criminal sexual conduct (CSC) in the second degree, assault with intent to commit great bodily harm less than murder (GBH), and two counts of aggravated domestic violence. (ECF No. 30-2, PageID.148-151). He pled guilty to GBH and aggravated domestic violence and his other charges were dismissed as part of his plea. (*Id.*). Divish was also charged, in a separate case involving the same victim, with five counts of CSC in the third degree, felonious assault, and eleven counts of domestic violence. (ECF No. 30-3, PageID.182-194). In that case, Divish pled guilty to felonious assault and one count of domestic violence, and the other charges were dismissed. (*Id.*). He was placed on parole on August 13, 2019, (ECF No. 30-4), and completed the maximum sentence on his felonious assault charge while continuing under supervision on his GBH sentence, (ECF No. 30-5).

The attached parole violation report authored by Davis states that on February 1, 2021, Davis received information that Divish was involved in an inappropriate relationship with the minor friend of his daughter, which was being investigated by the Michigan State Police. (ECF No. 30-4). The details of the report need not be discussed, because Divish contends that they are untrue, and sex crime charges were not brought against Divish. (*Id.*). As Divish says in the

4

complaint, "there was a Supervision Release Violation requiring return to prison,

but that was for possession of a firearm/imitation or simulation firearm."  (ECF

No. 1, PageID.6).

Divish was subsequently charged and convicted for possession of cocaine

found during the February 2021 search of his residence.  (ECF No. 30-6,

PageID.240-243).  Davis completed Divish's PSI, including the statement that

Divish had told his ex-wife that he had been in a sexual relationship with Davis

herself.  (ECF No. 1, PageID.3).  The PSI also included the allegations from the

initial parole violation report, which included sexual relations with a minor.  (*Id.*;

ECF No. 30-4).

After his return to prison, Divish participated in two sessions of the

Michigan Sexual Abuse Prevention Program (MSAPP) starting on September 27,

2021, but withdrew from the group only two days later on September 29, 2021.

(ECF No. 30-7).  Defendants note that this occurred before the alleged

involvement of Coates, Wilson, or Vanlangvelde.

Divish alleges that he was interviewed by Wilson prior to his parole board

hearing.  (ECF No. 1, PageID.7).  Wilson expressed concerns about the allegations

of sex with a minor and did not ask Divish about his imitation firearm violation.

(*Id.*).  Divish alleges that Wilson and Vanlangvelde decided to request that Divish

take a psychological risk assessment to determine his risk of committing a sex

crime while on parole.  (*Id.*, PageID.6).  The risk assessment, filed under seal by

defendants, shows that Costa assessed Divish and found "some concern" in certain

areas, though Divish denied all allegations of impropriety with minors.  (ECF No.

29).  Costa assessed a score of nine, indicating a moderate risk.  (*Id.*, PageID.101).

Another risk assessment tool used by Costa, the Static-99R (attached under seal at

ECF No. 28) placed him in the "above average" risk category for being charged

with a sexual offense.  This report considered "prior sexual offenses, not prior

sexual convictions[.]"  (ECF No. 30, PageID.122; ECF No. 28).

Defendants have also attached a copy of Divish's January 27, 2023 parole

board decision.  (ECF No. 30-8).  The decision was to continue the interview to

March 11, 2024, which the board classified as a twelve-month denial.  (*Id.*,

PageID.266).  The decision does not directly reflect any prior sexual misconduct,

stating that Divish had a history of probation failure, new criminal behavior on

parole, and discharge without improvement from parole.  (*Id.*, PageID.267).  It also

states that Divish "[l]acks insight into earlier failures[.]"  (*Id.*).  No

recommendation for specific treatment was made, but "corrective action which

may facilitate release" included demonstrating "responsible behavior by earning

positive reports in any programs [Divish] may be involved in"; "avoiding

situations which result in misconduct citations"; and "[c]omply[ing] with any

recommendation for psychological screening and/or therapeutic programming

when referred." (*Id.*, PageID.268).  Divish contends that this amounted to a requirement that he be subject to sex offender treatment and be treated as a sex offender in order to be eligible for parole.  (ECF No. 40, PageID.305-306).

### III.    Rule 12(b)(6) Legal Standard[2]

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys*, 684 F.3d at 608.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and

---

[2] Defendants also move under Federal Rule of Civil Procedure 12(b)(1), but they have not argued that the Court lacks subject-matter jurisdiction over any claims. The undersigned therefore proceeds under the Rule 12(b)(6) standard.

the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

Finally, as noted above, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents , and (4) letter decisions of government agencies may be appended to a motion to dismiss. *See Tellabs, Inc.*, 551 U.S. 308; s*ee also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

IV.    Discussion

8

Defendants argue that they are immune to monetary damages in their official capacities; that Wilson, Vanlangvelde, and Davis are immune for their roles in Divish's denial of parole; that Divish has failed to state any plausible constitutional claims; and that defendants are entitled to qualified immunity. Each argument will be considered in turn below.

A.    Constitutional Claims

1.    Standard

Defendants argue that Divish has not alleged a plausible procedural due process claim. To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must establish the deprivation of a constitutionally protected liberty or property interest. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Divish alleges that subjecting him to psychological risk assessments for sexual abuse and recommending sexual abuse prevention treatment without a conviction for any such crime violates his Fourteenth Amendment right to procedural due process.

2.    Analysis

The Supreme Court in *Swarthout* made clear that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." 516 U.S. at 220 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*,

9

442 U.S. 1, 7 (1979)).  However, courts have found that a prisoner has a liberty

interest in not being classified as a sex offender and required to complete sex

offender treatment.  As the Sixth Circuit has explained:

> This circuit has not addressed the question of whether a prisoner has a
> liberty interest in not being classified as a sex offender.  But other
> circuits that have considered the issue have held that prisoners do have
> such a liberty interest.  *See Renchenski v. Williams*, 622 F.3d 315, 326
> (3d Cir. 2010) (holding that prisoners have a liberty interest in not being
> labeled as a sex offender and forced into treatment, and thus are entitled
> to adequate process before prison officials take such action); *see also
> Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (per curiam)
> (holding that a convicted attempted murderer "retains a 'residuum of
> liberty' that would be infringed by classification as a sex offender
> without complying with minimum requirements of due process")
> (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)); *Neal v. Shimoda*,
> 131 F.3d 818, 829-30 (9th Cir. 1997).  We need not consider the merits
> of this issue of first impression.  At this juncture, the district court is
> best positioned to consider this issue in the first instance.  Still, at the
> motion to dismiss stage, considering the foregoing authorities, Harper's
> complaint contains sufficient factual matter to support a plausible claim
> that his procedural-due-process rights were violated when the
> defendants classified him as a sex offender.

*Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *3 (6th Cir. Apr. 28,

2020) (*Harper I*).

Following the Sixth Circuit's reversal and remand in *Harper I*, the

magistrate judge summarized the relevant case law from other circuit courts as

follows:

> In *Neal*, the Ninth Circuit confronted Hawaii's sex offender program,
> which labeled inmates as sex offenders and required its completion as
> a precondition for parole eligibility.  *Neal*, 131 F.3d at 818, 822.  Inmate
> Neal, who was not convicted of a sex offense but classified as a sex

offender based on the indictment and PSI, refused to complete the program. *Id.* The Ninth Circuit held that it could "hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender," and that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." *Id.* at 829-30.

In *Kirby*, the Eleventh Circuit held that Alabama's classification of inmate Edmond, who was convicted of attempted murder, as a sex offender based on two prior sex-related offense charges listed in his PSI implicated a liberty interest under the Due Process Clause. *Kirby*, 195 F. 3d at 1288. That court determined that Edmond had "a liberty interest in not being branded a sex offender" and "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause," so "an inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." *Id.* at 1292.

In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004) ("*Coleman I*"), the Fifth Circuit held that requiring a prisoner to register as a sex offender and participate in therapy as a condition of supervised release triggered a liberty interest. Inmate Coleman, who had not been convicted of a sex offense, was released from prison on mandatory supervision with conditions requiring him to register as a sex offender and attend sex offender therapy. *Coleman I*, 395 F.3d at 219. He was never given notice of an opportunity to contest these conditions, and when he failed to participate in therapy, his parole was revoked. *Id.* The Fifth Circuit agreed with the Ninth and Eleventh Circuits "that prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions." *Id.* at 222. It determined that this case was "materially indistinguishable from *Vitek*," and because the "highly invasive nature" of Texas' sex offender therapy program made it "qualitatively different from other conditions which may attend an inmate's release," Coleman had a "liberty interest in freedom from the stigma and compelled treatment on which his parole was conditioned" that required some procedural protections. *Id.* at 223.

11

> Finally, in *Renchenski*, the Third Circuit held that Pennsylvania's labeling of inmate Renchenski, who was sentenced to life without the possibility of parole for murder but neither charged nor convicted of a sex crime, as a sex offender and compelling him to submit to sex offender treatment triggered an independent liberty interest under the Due Process Clause. Due to his classification, Renchenski was enrolled, but refused to participate, in a sex offender program, which subjected him to "substantial penalties, including the loss of his prison job, assignment to disciplinary custody for ninety days, cell restriction for thirty days, suspension of the right to receive visitors, and loss of privileges such as access to television, radio, and the commissary." *Renchenski*, 622 F.3d at 323. The Third Circuit held that not only was a sex offender label "severely stigmatiz[ing]," but that "because Renchenski was convicted of murder and his punishment is predicated upon that conviction, sex offender treatment is not one of the conditions of confinement that his sentence imposes upon him. In turn, compelled treatment, i.e., sex offender therapy, changes the conditions of Renchenski's sentence and, accordingly, constitutes a loss of freedom from liberty that exceeds his loss of freedom from confinement." *Id.* at 326-27.

*Harper v. Arkesteyn*, No. CV 19-11106, 2022 WL 2338578, at *14-15 (E.D. Mich. June 28, 2022) (Grand, M.J,) (internal footnotes omitted), *report and recommendation adopted*, 2022 WL 3446198 (E.D. Mich. Aug. 17, 2022) (Steeh, J.) (*Harper II*). The court also summarized rulings from the 10th and 7th Circuits. *Id.* at *15 n.17 (citing *Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1238 (10th Cir. 2000) (holding that Colorado's classification of inmate Chambers as a sex offender, combined with a reduction in good time credits if he did not participate in sex offender treatment, implicated a state-created liberty interest); *Grennier v. Frank*, 453 F.3d 442 (7th Cir. 2006) (holding that the stigmatization of being called a sex offender and being denied parole on that basis did *not* implicate due

12

process where Wisconsin's discretionary parole system lacked any "mandatory language" to create a liberty or property interest in an opportunity to be released on parole)).

The *Harper II* court distinguished *Grennier*, as well as *Toney v. Owens*, 779 F.3d 330 (5th Cir. 2015) (cited by defendants) and other cases, finding that those courts were not presented with or otherwise did not address "whether an inmate was sufficiently classified as a sex offender for stigmatization purposes, much less whether one can be sufficiently stigmatized by being informally labeled as such in practice." *Harper II*, at *18 n.20.  In sum, the weight of authority from the Third, Fifth, Ninth, Tenth, and Eleventh Circuits as well as the decision of the district court in *Harper II*, suggests that a constitutionally protected liberty interest exists in not being labeled a "sex offender" and/or being required to attend sexual abuse prevention treatment.

Defendants argue that because sex offender treatment was only "recommended, but not mandated," Divish has not stated a valid due process claim.  (ECF No. 30, PageID.133).  However, Divish alleges that he was required to complete sexual offender programming, and that discovery will show this to be the case.  (ECF No. 1, PageID.5).  Even though this is not explicitly stated in the parole board's decision, the decision suggests that completion of treatment would be a positive factor for Divish's likelihood of parole.  Taking the allegations in the

light most favorable to Divish, he has stated a claim that he has been both labeled a sex offender and required to undergo sex offender treatment for parole eligibility. *See Neal*, 131 F.3d at 830 ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.").

Thus, Divish has stated a viable claim for a violation of his Fourteenth Amendment right to procedural due process: he has allegedly been required to undergo sex offender treatment and been labeled as a sex offender without a conviction or other due process protections.[3]

Divish also raises Fifth and Eighth Amendment claims. Unlike his Fourteenth Amendment due process claims, these claims should be dismissed.

"[D]ue process under the Fifth Amendment constrains the authority of the federal government." *Blunt v. Gleason*, No. 1:21-CV-924, 2022 WL 593589, at *1

---

[3] In their reply, defendants argue that Divish has not stated a claim because he has no constitutional right to parole, citing *Kikuchi v. Bauman*, No. 20-1593, 2020 WL 7587156, at *2 (6th Cir. Oct. 22, 2020) ("Without any right to parole, Kikuchi cannot state a claim that the procedures used by the Michigan Parole Board to evaluate him for parole, or the substantive reasons for the denial of parole itself, violated his right to due process."). *Kikuchi* is inapposite; the plaintiff there argued that he was entitled to parole, which is not the claim before this Court, and the plaintiff had pled guilty to one count of first-degree CSC against his daughter and possessing child sexually abusive material.

n.1 (W.D. Mich. Feb. 28, 2022). Divish "complains about a due process violation by the state which falls under the Fourteenth Amendment which constrains state governments." *Id.* Therefore, he has not stated a Fifth Amendment claim. And the Eighth Amendment prohibition against cruel and unusual punishment requires allegations that he "was deprived of a necessity of life, or that any of the defendants were deliberately indifferent to a serious risk to his health or safety." *Harper I*, 2020 WL 4877518, at *4. Divish has not made such allegations. Therefore, his Fifth and Eighth Amendment claims should be dismissed.

## B.    Immunities

### 1.    Eleventh Amendment Immunity

Defendants argue that they are immune from suit for monetary damages in their official capacities. This is relevant because Divish sues defendants in both their individual and official capacities and requests both monetary and injunctive relief. (ECF No. 1).

"The Eleventh Amendment protects a state official from suit for monetary damages in his or her official capacity because 'a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. . . . As such, it is no different from a suit against the State itself.' " *Harper II*, 2020 WL 4877518, at *2 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

15

"Sovereign immunity precludes suits against states and their entities or officers for monetary damages or retrospective relief but permits claims for prospective relief when brought against state officers in their official capacities." *Ashford v. Univ. of Michigan*, 89 F.4th 960, 969 (6th Cir. 2024).  Defendants are therefore immune from suit for money damages in their official capacities and are immune to the extent that Divish requests retrospective relief.  The immunity does not attach to Divish's request for prospective relief.

### 2.    Quasi-Judicial Immunity

Defendants argue that Wilson and Vanlangvelde are entitled to absolute immunity for their acts as parole board members under the doctrine of quasi-judicial immunity.  They also argue that Davis is entitled to immunity for her preparation of the reports referencing Divish's alleged activities.

"Judges are immune from liability for damages for acts committed within their judicial jurisdiction."  *Draine v. Leavy*, 504 F. App'x 494, 495 (6th Cir. 2012).  "[T]he absolute immunity that protects judicial officers engaged in judicial functions also protects other state officials engaged in adjudicative functions." *Dean v. Byerley,* 354 F.3d 540, 555 (6th Cir. 2004).  "Quasi-judicial immunity 'extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who

is immune.' " *Draine*, 504 F. App'x at 495 (quoting *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir. 1994)).

The Sixth Circuit has found that "parole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers," as are "those who make recommendations concerning parole[.]" *Draine*, 504 F. App'x at 496 (internal quotation marks and citations omitted). But other, non-judicial acts are not entitled to such immunity. *Id.* Thus, the immunity attaches to the nature and function of the act performed, not the job title of the defendant.

Here, Wilson and Vanlangvelde decided to continue Divish's parole hearing rather than grant him parole, and they are immune from liability for that decision. However, Divish also complains that they required him to undergo sex offender treatment and labeled him as a sex offender within the prison, as explained above. Defendants have not clearly explained at this stage how these decisions were judicial in nature in order to trigger quasi-judicial immunity. "Judicial immunity, though absolute and firm, is something to be applied carefully and should not be extended further than its justification warrants." *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 63 F.4th 510, 521 (6th Cir. 2023).

Similarly, Davis's argument for absolute immunity falls short. Defendants cite many cases holding that preparing presentencing reports and investigating

potential parole violations trigger immunity; however, all but one of these cases predate *Draine*, and that case is an unpublished district court order. *Draine* held that general, routine, investigative acts are not adjudicative or entitled to quasi-judicial immunity, relying on three cases from other circuit courts with similar holdings. 504 F. App'x at 496 (citing *Swift v. California,* 384 F.3d 1184 (9th Cir. 2004) (holding that absolute immunity did not apply to parole agents investigating parole violations and recommending initiation of parole revocation proceedings); *Ray v. Pickett,* 734 F.2d 370, 374 (8th Cir. 1984) ("[W]e do not find that the function of a probation officer in submitting a parole violation report is either adjudicatory or prosecutorial in nature."); *Galvan v. Garmon,* 710 F.2d 214 (5th Cir. 1983) (per curiam) (holding that qualified, rather than absolute, immunity applied to state probation officer who mistakenly caused the arrest and incarceration of a person on probation)). Based on these authorities, the undersigned finds that quasi-judicial immunity does not attach to the allegations that Davis fabricated reports indicating that Divish had committed acts of a sexually inappropriate nature. Thus, defendants are not entitled to absolute immunity on quasi-judicial grounds based on the record as it stands.

### 3.     Qualified Immunity

#### a.     Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified). After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* at 472. The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

In determining whether a right has been clearly established, courts " 'must look first to decisions of the Supreme Court, then to decisions of [their circuit court] and other courts within our circuit, and finally to decisions of other circuits.' " *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (quoting *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006)).  Cases that are nonbinding (e.g., district court decisions, decisions of other circuits) may be used as persuasive, but not mandatory, authority.  *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

b.    Application

As explained above, Divish has stated a Fourteenth Amendment due process claim.  Defendants argue that even if he has, they are entitled to qualified immunity because the constitutional right involved was not clearly established at the time.

Defendants note that in *Harper I*, the Sixth Circuit explicitly stated that "[t]his circuit has not addressed the question of whether a prisoner has a liberty interest in not being classified as a sex offender" and that "[w]e need not consider the merits of this issue of first impression."  2020 WL 4877518, at *3.  The Court also said that "other circuits that have considered the issue have held that prisoners *do* have such a liberty interest."  *Id.* (citing *Renchenski*, 622 F.3d 315, *Kirby*, 195 F.3d 1285, and *Neal*, 131 F.3d 818) (emphasis added).

20

On remand, the magistrate judge in *Harper II* noted that a protected liberty interest can be one (1) created directly by the Due Process Clause itself or (2) indirectly as a state created right.  2022 WL 2338578, at *15 (*report and recommendation adopted*, 2022 WL 3446198) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

> First, an independent federal constitutional liberty interest is implicated when a change in the prisoner's conditions of confinement essentially "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Sandin*, 515 U.S. at 484 (citing as examples *Vitek*, 445 U.S. at 492-93 (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)).  Second, "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause," but such interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84 (citations omitted); *see Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process).

*Id.*  Based on this Supreme Court authority, a majority of circuit courts have found that labeling an inmate as a sex offender and requiring him to attend sex offender treatment triggers the same due process right.  *Id.* (citing *Renchenski*, *supra*; *Neal*, *supra*; *Coleman*, 409 F.3d at 669).

"[A]n action's unlawfulness can be 'clearly established' from direct holdings, from specific examples describing certain conduct as prohibited, or from the general reasoning that a court employs." *Baynes v. Cleland*, 799 F.3d 600, 612 (6th Cir. 2015).  Here, as the court in *Harper II* found regarding Harper, Divish's

21

constitutional rights were established by the general reasoning in *Vitek*.  Applied to this case, "[Divish's] conviction and prison sentence for a non-sex offense do not authorize the MDOC to classify him as a sex offender and to subject him to mandatory sex offender treatment without first affording him additional due process protections." *Harper II*, 2022 WL 2338578, at *16.  Being based on the clear reasoning from Supreme Court precedent, this right was clearly established.

Furthermore, the Sixth Circuit does "not require a prior, precise situation; a finding that the very action in question has previously been held unlawful; or a case directly on point" in order for law to be clearly established. *Guertin*, 912 F.3d at 932.  There need only be "controlling authority or a robust consensus of cases of persuasive authority." *Plumhoff v. Rickard*, 572 U.S. 765 (2014).  Not only do Supreme Court precedents compel a finding that Divish's rights were clearly established, *see Vitek*, *Sandin*, and *Washington*, *supra*, but the persuasive authority from *Harper II*, *Renchenski*, *Neal*, *Kirby*, *Coleman*, and *Chambers* make clear that the Supreme Court precedent applies to Divish's allegations.

The cases cited in opposition by defendants miss the mark.  As reasoned in *Harper II*,

> *Kramer v. Donald*, 286 F. App'x 674, 676-67 (11th Cir. 2008) addressed a narrow issue of whether a parole board's precondition to complete sex offender counseling, standing alone, was "[ ]sufficiently stigmatizing" to support a procedural due process claim.  Moreover, none of the cases in *Grennier, Toney v. Owens*, 779 F.3d 330 (5th Cir. 2015), or *Hernandez v. Washington*, No. 16-10854, 2017 WL 1214436

22

(E.D. Mich. Jan. 20, 2017), *report and recommendation adopted*, 2017 WL 1130090 (E.D. Mich. Mar. 27, 2017), had to address an issue as to whether an inmate was sufficiently classified as a sex offender for stigmatization purposes, much less whether one can be sufficiently stigmatized by being informally labeled as such in practice.

2022 WL 2338578, at *18 n.20.

Thus, defendants had "fair warning" that labeling Divish a sex offender and requiring him to undergo sex offender therapy without due process was a violation of his constitutional rights. As such, defendants are not entitled to qualified immunity.

## V.    In Sum

Reading the complaint in the light most favorable to Divish, he is claiming that his Fourteenth Amendment procedural due process rights were violated when he was labeled a sex offender and required by defendants to complete sex offender treatment as a precondition to parole. Divish's allegations are sufficient to state a Fourteenth Amendment claim, and defendants are not currently entitled to quasi-judicial immunity or qualified immunity on this claim. Defendants are entitled to Eleventh Amendment immunity on Divish's claims against them in their official capacities for monetary and retrospective relief. However, Divish has failed to state a Fifth or Eighth Amendment claim. Therefore, the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part: granted as to the Fifth and Eighth Amendment claims and denied as to the Fourteenth

Amendment claim.  Importantly, Divish is not asking that the parole board's

decision be reversed, only that he be afforded due process before being labeled a

sex offender and required to complete sex offender treatment as a precondition of

parole.  The undersigned believes that Divish has stated a plausible due process

claim under the circumstances that should proceed past the dismissal stage.

<h2 style="text-align:center">VI.    Conclusion</h2>

For the reasons set forth above, the undersigned RECOMMENDS that

defendants' motion to dismiss, (ECF No. 30), be GRANTED IN PART and

DENIED IN PART.  Specifically, Divish should be allowed to proceed to the

merits on his Fourteenth Amendment procedural due process claim; however his

Fifth and Eighth Amendment claims should be DISMISSED.

Dated: August 7, 2024                    s/Kimberly G. Altman
Detroit, Michigan                        KIMBERLY G. ALTMAN
                                         United States Magistrate Judge

<h3 style="text-align:center"><u>NOTICE TO PARTIES REGARDING OBJECTIONS</u></h3>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 7, 2024.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
